UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID G. FOSS and TRACY J. FOSS,<br><br>　Plaintiffs,<br><br>v.<br><br>FAY SERVICING, LLC,<br><br>　Defendant. | Case No. 1:22-cv-00298 |

## COMPLAINT

**NOW COME** Plaintiffs, DAVID G. FOSS and TRACY J. FOSS, through undersigned counsel, complaining of Defendant, FAY SERVICING, LLC, as follows:

## NATURE OF THE ACTION

1. This action is seeking redress for Defendant's violation(s) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. and the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq*.

2. Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e).

3. The FDCPA regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects … debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6).

1

4. Among other things, the FDCPA prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene or profane language or violence of the threat thereof, §§ 1692d(1), (2). *See* generally §§ 1692b-1692j; *Heintz v. Jenkins*, 514 U.S. 291, 292-293 (1995).

5. The Consumer Fraud Act "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Cohen v. Am. Sec. Ins. Co.*, 735 F. 3d 601, 608 (7th Cir. 2013) (quoting *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 775 N.E. 2d 951 (2002)).

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

7. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

8. DAVID G. FOSS and TRACY J. FOSS ("David" individually, "Tracy" individually, "Plaintiffs" collectively) are natural persons, over 18-years-of-age, who at all times relevant resided at 527 May Street, Roselle, Illinois 60172.

9. Plaintiffs are "consumers" as defined by 15 U.S.C. § 1692a(3).

10. Plaintiffs are "persons" as defined by 815 ILCS 505/1(c).

11. Plaintiffs are "consumers" as defined by 815 ILCS 505/1(e).

12. FAY SERVICING, LLC ("Defendant") is a limited liability company organized and existing under the laws of the state of Delaware.

2

13. Defendant maintains a principal place of business at 1601 Lyndon B. Johnson Freeway, Farmers Branch, Texas 75234.

14. Defendant is a servicer of residential mortgage loans throughout the United States.

15. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

16. Defendant uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

17. Defendant is engaged in "commerce" as defined by 815 ILCS 505/1(f).

## FACTUAL ALLEGATIONS

18. On May 19, 2008, Plaintiffs executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. as Nominee for EverBank ("Mortgage").

19. The Mortgage secured the purchase of Plaintiffs' personal residence located at 527 May Street, Roselle, Illinois 60172 ("Property").

20. The Mortgage secured the repayment of the indebtedness evidenced by a promissory note ("Note") in the amount of $414,627.00 ("Loan").

21. On or before April 22, 2022, the Loan was assigned, sold, or transferred to JPMorgan Chase Bank, National Association.

22. On or before January 28, 2014, the Loan was assigned, sold, or transferred to Secretary of Housing and Urban Development.

23. On or before February 25, 2014, the Loan was assigned, sold, or transferred to Bayview Loan Servicing, LLC.

24. On or before November 6, 2017, the Loan was assigned, sold, or transferred to Bayview Dispositions IIIB, LLC.

25. On or before December 19, 2017, the Loan was assigned, sold, or transferred to U.S. Bank Trust National Association, as Trustee for CVF III Mortgage Loan Trust II.

26. Plaintiffs defaulted on the Loan by failing to make monthly payments.

27. On or before May 3, 2019, the Loan was assigned, sold, or transferred to Wilmington Savings Fund Society, FSB, as Trustee for Mill City Mortgage Loan Trust 2018-4.

28. The servicing of the Loan was transferred to Defendant.

29. Defendant modified the loan payments, effective May 1, 2020.

30. On July 1, 2020, Plaintiffs defaulted on the Loan yet again by failing to make monthly payments.

31. Subsequently, Plaintiffs received a written offer to purchase the Property.

32. Plaintiffs, through counsel, sent a payoff request to which Defendant responded: (1) on April 19, 2021, with a payoff statement, and (2) on April 29, 2021, with an updated payoff statement, providing pertinently:

```
These figures are good to May 16, 2021.
This loan is due for the July 01, 2020 payment.
The current total unpaid Principal Balance is:      $   337,977.44
The current total Principal Deferment Amount                  .00
Interest at 3.87500%                                    12,991.26
Escrow/Impound Overdraft                                13,120.18
Unpaid Late Charges                                        862.10
Recoverable Corporate Advances                           1,293.77
Rehab Holdback                                                .00
Cema Assignment Fee                                           .00
Default Interest                                              .00
****TOTAL AMOUNT TO PAY LOAN IN FULL***             $   366,244.75

Funds received on or after May 16, 2021 will require an additional
$46.30 interest per Day.
```

4

*See* Exhibit A.

33. The payoff letter had a "good through" date of May 16, 2021.

34. On May 14, 2021, two days before the payoff letter expired, the Plaintiffs closed on the sale of the Property.

35. As a part of the closing and in reliance of the payoff letter, the closing agent Attorneys Title Guaranty Fund Inc. ("ATGF") wired $366,244.75 to Defendant.

36. The following day, Defendant verbally informed Plaintiffs that $366,244.75 was not enough to pay off the account.

37. On May 27, 2021, almost two weeks after the closing, Defendant returned the wire of $366,244.75 to ATGF.

38. For the next week, Plaintiffs, through counsel, sought "revised" payoff figures—to no avail.

39. Defendant eventually sent another payoff statement, dated June 4, 2021, providing pertinently:

```
These figures are good to June 10, 2021.
This loan is due for the July 01, 2020 payment.
The current total unpaid Principal Balance is:   $  337,977.44
The current total Principal Deferment Amount            .00
Interest at 3.87500%                               14,248.71
Escrow/Impound Overdraft                           13,120.18
Unpaid Late Charges                                   862.10
Recoverable Corporate Advances                      3,673.76
Rehab Holdback                                          .00
Cema Assignment Fee                                     .00
Default Interest                                        .00
****TOTAL AMOUNT TO PAY LOAN IN FULL***         $  369,782.19

Funds received on or after June 10, 2021 will require an
additional $46.30 interest per Day.
```

*See* Exhibit B.

40. That afternoon, ATGF, in turn, wired $369,782.19 to Defendant.

## **DAMAGES**

41. Congress enacted the FDCPA to rein in certain "evils" associated with debt collection, *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015), because existing legal remedies were, in its judgment, "inadequate to protect consumers." 15 U.S.C. § 1692(b).

42. To address those practices, the FDCPA imposes a "rule against trickery." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007); *see also O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 941 (7th Cir. 2011) (noting that the FDCPA's prohibitions "keep consumers from being intimidated or tricked by debt collectors").

43. The statute thus gives debtors a right to receive accurate information, which they can enforce against debt collectors by bringing suit under the FDCPA. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("The [FDCPA] is designed to provide information that helps consumers to choose intelligently ... .").

44. The value of receiving truthful information about one's financial affairs—and the ill effects of receiving misleading information—may be hard to quantify, especially where, the plaintiff did not act upon the misinformation.

45. Here, however, Plaintiffs did act upon the misinformation, and the payment was returned.

46. Confronted with alienating their buyer, Plaintiffs were forced to choose: either pay the additional $3,537.44 requested, or lose the sale and lose the home to eventual foreclosure.

6

47. Plaintiffs selected to pay the additional amounts requested (including an additional $1,257.45 in interest—accrued as Plaintiffs awaited revised payoff figures).

48. Concerned with having had their rights violated, Plaintiffs engaged counsel—expending time and incurring attorney's fees to seek recovery for the claims alleged, *infra*.

## CLAIMS FOR RELIEF

### COUNT I:
### Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq*.)

49. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

### Violation of 15 U.S.C. § 1692e

50. Section 1692e provides:

    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.

    (2)  The false representation of—

        (A)  the character, amount, or legal status of any debt.

    (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

51. Defendant violated 15 U.S.C. §§ 1692e(2)(A) and e(10) by misrepresenting the amount of the debt owed.

**WHEREFORE**, Plaintiffs, DAVID G. FOSS and TRACY J. FOSS, pray that this Honorable Court enter an Order:

A.  Finding that Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6);

B. Finding that the Loan is a "debt" as defined by 15 U.S.C. § 1692a(5);

C. Finding that Defendant used false, deceptive, or misleading representations or means in connection with the collection of Plaintiffs' Loan, violating 15 U.S.C. § 1692e;

D. Awarding any actual damages sustained by Plaintiffs;

E. Awarding such additional damages as the Court may allow, but not exceeding $1,000.00;

F. Requiring Defendant to pay the costs of the action, together with a reasonable attorney's fee as determined by the Court; and

G. Providing such equitable and other relief as justice may require.

## COUNT II:
**Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.)**

52. All paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

53. Section 2 of the Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been deceived, or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to section 5(a) of the Federal Trade Commission Act.

54. Defendant violated 815 ILCS 505/2 by providing an inaccurate payoff amount.

8

55. "Unfairness under the Consumer Fraud Act depends on three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and/or] (3) whether it causes substantial injury to consumers." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1002 (7th Cir. 2018).

56. "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 775 N.E.2d at 961; *see also Newman*, 885 F.3d at 1002 ("A significant showing that any of the three factors is met is enough; so too are facts that, to a lesser degree, satisfy all three.").

57. A practice offends public policy if it "violates statutory or administrative rules establishing a certain standard of conduct." *Salka v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 2018 U.S. Dist. LEXIS 206795, 2018 WL 6433853, at *8 (N.D. Ill. 2018); *Robinson*, 775 N.E.2d at 961; *see Newman*, 885 F.3d at 1002 (finding Consumer Fraud Act unfairness based on violation of a state statute and a state administrative rule); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 740-41 (7th Cir. 2017) (treating "two provisions of the Illinois Administrative Code" as exemplary of public policy).

58. An unfairness claim may also rest on violations of administrative directives, like HAMP servicing guidelines, that themselves do not permit private enforcement. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 575 (7th Cir. 2012) (recognizing that a violation of HAMP directives could support a Consumer Fraud Act unfairness claim); *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011) (same).

9

59. 15 U.S.C. § 1639g provides: "[a] creditor or servicer of a home loan shall send an *accurate* payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance."

60. The corresponding regulation that implements the statute, 12 C.F.R. § 1026.36(c)(3), similarly requires that a "creditor, assignee, or servicer" provide an *accurate* payoff balance."

61. Defendant's practice of providing an inaccurate payoff balance offends public policy as established by 15 U.S.C. § 1639g and its implementing regulation, 12 C.F.R. § 1026.36(c)(3).

62. Conduct is immoral, unethical, oppressive, or unscrupulous for Consumer Fraud Act purposes if it "leave[s] the consumer with little choice except to submit to it." *Newman*, 885 F.3d at 1002-03; *see also Robinson*, 775 N.E.2d at 962 (holding that oppression requires a "lack of meaningful choice" for consumers).

63. Oppression occurs, for example, if a consumer is forced to choose between paying a greater amount and losing a previously promised benefit. *See Newman*, 885 F.3d at 1003 (where a consumer had to choose between forfeiting "sunk costs" and paying unexpectedly higher expenses); *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 834 (7th Cir. 2014) (recounting a case where a consumer must choose between losing his investment and obtaining an overpriced product he did not want) (citing *Thompson v. Fajerstein*, 2008 U.S. Dist. LEXIS 78264, 2008 WL 4279983, at *5 (N.D. Ill. 2008)); *Ekl v. Knecht*, 223 Ill. App. 3d 234, 585 N.E. 2d 156, 162-63, 165 Ill. Dec. 760 (Ill. App. 1991) (where a plumber extracted an additional fee by threatening to undo all the repairs he had just made); *see also Wendorf v. Landers*, 755 F. Supp. 2d 972, 979

(N.D. Ill. 2010) ("Courts interpreting the meaning of 'unfair practices' have held that a plaintiff states a claim under the Consumer Fraud Act where the defendant's conduct gave plaintiff no reasonable alternative to incurring a charge or penalty.")

64. Confronted with alienating their buyer, Plaintiffs were forced to choose: either pay the additional amount requested, or lose the sale and lose the home to eventual foreclosure.

65. That Hobson's choice, requiring Plaintiffs to pay an additional $3,537.44 qualifies as oppression under the Consumer Fraud Act. *See Newman*, 885 F.3d at 1003 (finding oppression where each choice presented would force the consumer to lose the benefit of the bargain to which she allegedly was entitled); *Robinson*, 775 N.E.2d at 962 (noting that demands for higher payment, when combined with threats of "dire alternatives," result in oppression by depriving the plaintiffs of "meaningful choice").

66. Finally, by inducing Plaintiffs to pay the additional $3,537.44—more than what Defendant's April 29, 2021 payoff statement stated—Defendant inflicted substantial injury. *See Newman*, 885 F.3d at 1003 ("Newman also has alleged substantial injury [because] MetLife induced her to pay a premium … at a rate greater than she would otherwise have paid [absent the misrepresentation]."); *Robinson*, 775 N.E.2d at 962 (noting that a consumer "compelled to pay an unreasonable amount … in excess of what she [had] … agreed to pay" suffered "substantial harm" under the Consumer Fraud Act) (describing *Ekl*, 585 N.E.2d at 163).

**WHEREFORE**, Plaintiffs, DAVID G. FOSS and TRACY J. FOSS, pray that this Honorable Court enter an Order:

    A. Finding that Defendant engaged in trade or commerce within the meaning of Section 1(f) of the Consumer Fraud Act;

B.   Finding that, in the conduct of trade or commerce, Defendant engaged in unfair or deceptive acts or practices within the meaning of Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, by the unlawful acts and practices alleged in this Complaint;

C.   Preliminarily and permanently enjoining Defendant from engaging in the deceptive and unfair practices alleged in this Complaint;

D.   Awarding actual economic damages or any other relief which the Court deems proper;

E.   Requiring Defendant to pay all costs for the prosecution and investigation of this action; and

F.   Providing such equitable and other relief as justice may require.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: January 19, 2022                     Respectfully submitted,

**DAVID G. FOSS and TRACY J. FOSS**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road, Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com

Arthur C. Czaja
LAW OFFICE OF ARTHUR C. CZAJA
7521 North Milwaukee Avenue
Niles, Illinois 60714

+1 847-647-2106
arthur@czajalawoffices.com